UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NOMA ABEL | CIVIL ACTION |
| VERSUS | NO. 18-7715 |
| SOCIAL SECURITY ADMINISTRATION | SECTION "B" (3) |

REPORT AND RECOMMENDATION

Plaintiff Noma Abel filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.  BACKGROUND

Plaintiff protectively filed his application for DIB and SSI on March 19, 2015, alleging a disability onset date of November 7, 2013. (Adm. Rec. at 92-93, 178-88). Plaintiff alleged disability due to neck problems, back problems, mental illness, right and left knee pain, back pain, left and right shoulder pain, and a lower back disc. (*Id.* at 200). Plaintiff, born on January 1, 1977, was 36 years old on the date on which he alleged disability. (*Id.* at 92). Plaintiff has a high-school education, (*id.* at 201), and has past work experience as a manager at a beauty store and a clothing store and the owner of a beauty store. (*Id.*).

Defendant initially denied plaintiff's application on September 17, 2015. (*Id.* at 90-91). Plaintiff sought an administrative hearing, which defendant held on March 16, 2017. (*Id.* at 49-

1

89). Plaintiff and a vocational expert ("VA") testified at the hearing.

On June 1, 2017, the ALJ issued a decision in which she concluded that plaintiff is not disabled. (*Id.* at 10-24). In the decision, the ALJ concluded that plaintiff has the severe impairments of affective disorder, cervical degenerative disc disease, and lumbar degenerative disc disease. (*Id.* at 12). The ALJ ultimately held, however, that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 13). The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except that he can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs and occasionally balance, stoop, crouch, kneel, and crawl. (*Id.* at 17). In addition, he cannot work with moving or dangerous machinery, cannot work at unprotected heights, and cannot engage in commercial driving. (*Id.*). He is also limited to unskilled work that involves routine, repetitive tasks. (*Id.*). Moreover, he cannot do work that involves strict production quotas or fast-paced work. (*Id.*). And lastly, he must have no direct contact with the public and would work better with things than people. (*Id.*). Ultimately, the ALJ concluded that plaintiff can perform the jobs of silver wrapper, folding machine operator, and house cleaner, which jobs exist in significant numbers in the national economy. (*Id.* at 23). The ALJ thus denied plaintiff DIB and SSI. (*Id.* at 23-24).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled. (*Id.* at 175-77). On June 22, 2018, the Appeals Council denied plaintiff's request. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there

is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached

and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To

4

> determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)).   If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy.  *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).   Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination.   *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.   *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence."   *Id*.

## IV.    ISSUES ON APPEAL

There are four issues on appeal:

    (1)    Whether the ALJ erred by applying the incorrect legal standard to the opinion of Dr. Leia Frickey.

    (2)    Whether substantial evidence supports the ALJ's RFC determination.

    (3)    Whether the VE's testimony is consistent with the Dictionary of Occupational Titles ("DOT").

    (4)    Whether plaintiff's mental impairments meet the requirements of Listing 12.04.

## V.    ANALYSIS

### 1.    Whether the ALJ erred by applying the incorrect legal standard to the opinion of Dr. Leia Frickey.

Plaintiff argues that Dr. Leia Frickey was a treating physician, and her opinions are therefore entitled to controlling weight. The Commissioner contends that this argument is without merit. The Commissioner's regulations set forth various factors to consider in evaluation of opinion evidence. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c). Generally, the Commissioner accords more weight to a medical opinion from a treating source because "they are likely to be the medical professionals most able to provide a detailed, *longitudinal* picture of [plaintiff's] medical impairment." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (emphasis added). Here, Frickey evaluated plaintiff six times between November 2013 and April 2014 (*i.e.*, five months). (Adm. Rec. at 365-74). The relevant period here that the Commissioner considered, however, lasted three-and-a-half years. These isolated encounters do not create the "ongoing treatment relationship" that is necessary to qualify Frickey as a treating source. *See* 20 C.F.R. §§ 404.1502, 416.902. This brief snapshot of plaintiff's condition immediately after a vehicle accident in November 2013 does not provide a longitudinal picture of plaintiff's alleged medical impairments. Thus, despite plaintiff's argument to the contrary, the Court finds that Frickey's opinion was not entitled to any significant

weight by the ALJ.

Further, Frickey's statement that "[plaintiff] was advised to restrict his activities to no lifting, bending, or stooping whatsoever [until] further evaluation" – a statement on which plaintiff relies – is merely a statement to ensure plaintiff's recovery progression after his vehicle accident. (Adm. Rec. at 365). Given the small period of time during which Frickey treated plaintiff, this statement does not constitute a permanent medical opinion as to plaintiff's diagnosis, prognosis, his abilities despite impairments, and his physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). This is evident by Frickey's acknowledgement that these limitations were in place *until further evaluation*. (*Id.* at 358). Indeed, she specifically asked plaintiff to follow up with a neurosurgeon for further evaluation and return to her office in four weeks (and this Court can find no evidence of a return visit after April 2014). (*Id.*)

The ALJ properly considered the record as a whole, including the underlying evidence to Frickey's April 2014 statement that plaintiff could not "lift, bend, or stoop whatsoever." (*Id.* at 13-22, 258, 365). As noted, plaintiff was involved in a motor vehicle accident in November 2013. For the five months subsequent to the accident, Frickey evaluated him on a monthly basis. (*Id.* at 365-74). She noted that plaintiff had full range of motion in his cervical spine, some tenderness, and some limitation in range of motion in his lumbar spine. (*Id.* at 372-73). Despite these findings, Frickey regularly noted that plaintiff did not have any work limitations. (*Id.* at 367, 368, 374). However, five months after plaintiff's motor vehicle accident, Frickey noted that plaintiff could not "lift, bend, or stoop whatsoever." (*Id.* at 358, 365).

Frickey's examination notes reveal some pain, aching joints, and some limitation in range of motion, but do not support Frickey's extreme opinion as to plaintiff's medical condition. (*Id.* at

7

365-74). Moreover, it directly contradicts her prior statements that plaintiff did not have any work limitations. (*Id.* at 367, 368, 374). Additionally, Frickey's opinion is inconsistent with subsequent examinations in the record. "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (brackets, quotations, and citation omitted). For example, another examination, dated January 2016, revealed full range of motion in his upper extremities, symmetric deep tendon reflexes, normal sensation, normal motor strength, and no evidence of muscle atrophy. (*Id.* at 966). Additionally, plaintiff reported to the emergency room on May 27, 2016, following a work-related accident. (*Id.* at 1060-67). Plaintiff denied any arthralgias or back pain, and the examination revealed normal musculoskeletal range of motion, with no loss of strength noted. (*Id.* at 1061). The Court finds that plaintiff fails to address or reconcile the subsequent treatment notes which demonstrate that his condition improved after Frickey's final April 2014 opinion. There is no merit to this argument.

    **2.    Whether substantial evidence supports the ALJ's RFC determination.**

The RFC is an administrative assessment that identifies the most a claimant can do at work. 20 C.F.R. §§ 404.1545(a); 416.945(a). The ALJ has the sole responsibility for assessing the RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); 20 C.F.R. §§ 404.1546(c); 416.946(c). Here, and as noted above, the ALJ determined that plaintiff retains the RFC to perform light work with the following limitations: he can never climb ropes, ladders, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally balance, stoop, crouch, kneel, and crawl; he cannot work with moving and/or dangerous machinery or unprotected heights; he cannot engage in commercial driving; he can perform unskilled work that involved routine, repetitive tasks; he must

have low stress work such as work that does not involve strict production quotas or fast paced work; he cannot have direct contact with the public; and he would work better with things than people. (Adm. Rec. at 17). The Court finds that the record fully supports this assessment, including plaintiff's work activities, physical examinations, imaging, and plaintiff's non-compliance with treatment.

Despite plaintiff's argument that he suffers from disabling pain that results in "significant" limitation in his ability to stand or reach, emergency room department records reveal that plaintiff was working in May 2016. (*Id.* at 21, 1060). Plaintiff went to the emergency room after he was "accidentally cut by a coworker with an object he compared to sheetrock." (*Id.*). Plaintiff's ability to work despite allegedly disabling impairments is relevant in the ALJ's evaluation and weighs against plaintiff's allegation of disability. *See Johnson v. Bowen*, 864 F.2d 340, 347-48 (5th Cir. 1998).

Not only does the record reflect that plaintiff remained able to work in May 2016, he also traveled to Palestine for 45 days without complication, took a weekend trip to Dallas, and requested paperwork for a driver's license despite later testimony that he was unable to drive. (*Id.* at 21, 55, 427, 698, 795). The Court finds that the ability to travel for this extended period, notably without any complication, is inconsistent with plaintiff's allegation of disability. It is axiomatic that the ALJ may consider inconsistencies between plaintiff's testimony and the medical evidence to evaluate plaintiff's credibility. *See Hernandez v. Astrue*, 278 F. App'x 333, 340 (5th Cir. 2008).

In addition, the objective medical evidence, including physical examinations and imaging, support the ALJ's RFC assessment. (Adm. Rec. at 17). As noted above, plaintiff was involved in a motor vehicle accident in November 2013. (*Id.* at 18, 410-13). After the accident, he complained

of gradually worsening neck and back pain. (*Id.* at 410). Despite plaintiff's allegation that he is "significantly limited in his ability to stand," a physical examination in April 2016 showed that plaintiff maintained full range of motion, full muscle strength, intact sensation, and intact deep tendon reflexes in his upper and lower extremities. (*Id.* at 966). Imaging in February 2015 after plaintiff's spinal fusion surgery revealed intact hardware with good alignment, full upper extremity range of motion at the shoulder and elbows, normal sensation and muscle strength, and no evidence of atrophy. (*Id.* at 19, 706). He began physical therapy in December 2014 and continued until he felt he no longer needed physical therapy, nor pain medication, in June 2015. (*Id.* at 19, 697-98).

Plaintiff cites to various medical records to support his alleged significant limitation in his ability to stand and reach. However, it is the sole responsibility of the ALJ to determine plaintiff's RFC assessment based on the record as a whole. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). Therefore, while there may be isolated examinations to which plaintiff can cite to support his arguments, the longitudinal record contains substantial evidence to support the ALJ's RFC determination. Indeed, the task of weighing the evidence is the province of the ALJ, not of this Court. *See Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

As to plaintiff's mental limitations, the ALJ found that plaintiff can only perform unskilled jobs that involve simple, routine tasks and he must have low stress work without strict production quotas or fast-paced work. (*Id.* at 17). Plaintiff contends that he "has more mental limitations than those found by the ALJ." [Doc. #10-3 at 17]. However, plaintiff fails to set forth any additional limitations not already incorporated in the RFC assessment. Numerous mental status examinations revealed that plaintiff was cooperative and had logical thought processes, intact insight, intact memory, and intact attention. (*Id.* at 15, 829-30, 835-36, 842-43, 849-50).  The Commissioner

10

also noted that other treatment notes record the same findings. (*Id.* at 855- 943). At times, plaintiff exhibited an anxious mood and reported fatigue, decreased attention and concentration, and excessive worry. (*Id.* at 15, 826). As a result, the ALJ incorporated such limitations into plaintiff's RFC assessment. (*Id.* at 17).

Plaintiff also cites to vocational expert testimony to support his allegation of an inability to stay on task. At the oral hearing, the ALJ posed a hypothetical in which the vocational expert assumed that an individual like plaintiff would be off task at least 20 percent of the workday in addition to normal breaks. (*Id.* at 80). The vocational expert testified that such a person would not be able to perform any jobs in the local and national economy. (*Id.* at 80). However, the record does not support this hypothetical. Indeed, plaintiff himself did not indicate any complications with his memory, ability to complete tasks, concentration, or completing tasks. (*Id.* at 227). When hypothetical testimony by a vocational expert is unsupported by the evidence, the ALJ may properly disregard that testimony. *See Owens v. Hecker*, 770 F.2d 1276, 1282 (5th Cir. 1985). Thus, the ALJ properly declined to include any such limitation in plaintiff's RFC assessment. The Court finds that the record as a whole reveals that substantial evidence supports the ALJ's RFC assessment.

### 3. Whether the VE's testimony is consistent with the Dictionary of Occupational Titles ("DOT").

As is so often the case, during the administrative hearing, an ALJ may elicit testimony from a vocational expert to determine if there are jobs available in the national and local economy that plaintiff can perform. This exchange takes the form of hypothetical questions posed by the ALJ in which the vocational expert will then respond with jobs from the DOT that fit within these hypotheticals.

11

At step five, the ALJ determined that plaintiff can perform work as a silver wrapper, folding machine operator, and cleaner. (*Id.* at 23). To reach this decision, the ALJ posed a hypothetical that mirrored the resultant RFC, including the limitation that plaintiff cannot perform jobs that require a production rate or fast-paced work. (*Id.* at 83). The vocational expert testified that a production rate would eliminate the silver wrapper job as there would be a certain number of silver bundles an employee would need to make. (*Id.* at 83-84). This testimony led to a discussion between the ALJ and vocational expert as to production rate. (*Id.* at 83-85). Ultimately, they agreed that the silver wrapper job merely has a job requirement like all other jobs, and it does not have a strict production rate quota, as one would find in an assembly-like job. (*Id.* at 84-85). Therefore, plaintiff can still perform the silver wrapper job.

Plaintiff now argues that this discussion between the ALJ and vocational expert resulted in a conflict between the vocational expert and the DOT. *See* U.S. Dep't of Labor, Dictionary of Occupational Title (DOT) 318.687-018, 1991 WL 672757. However, the DOT is silent as to the work pace or flow of a job. This is precisely why the use of a vocational expert is beneficial as she is familiar with specific requirements of a particular occupation, including work conditions and the attributes and skills needed. *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). What plaintiff characterizes as a conflict is merely a discussion between the ALJ and vocational expert as to the particular requirements of a particular occupation. Nonetheless, even if the Court were to assume plaintiff cannot perform the requirements of a silver wrapper, there are two other jobs, folding machine operator and cleaner, that plaintiff can perform, and she does not dispute her ability to perform these jobs. (*Id.* at 23); [Doc. #10-3 at 19-21]. The regulations only require that

12

a claimant be able to perform a significant number of jobs in "one or more occupations." 20 C.F.R. §§ 404.1566(b), 416.966(b). This Court has no trouble finding that the ALJ met this burden.

Further, plaintiff's counsel failed to cross-examine the vocational expert concerning the production-rate limitation. (Tr. 85-88). When plaintiff was afforded the opportunity to cross-examine the vocational expert as to any perceived deficiency and chose not to develop the issue at the administrative hearing, he cannot now complain of the adequacy of the ALJ's hypotheticals to the vocational expert. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). In fact, plaintiff's counsel posed her own hypothetical to the vocational expert, one that was void of a production-rate limitation. (*Id.* at 85-88). Again, what plaintiff argues is a conflict between the vocational expert's testimony and the DOT is merely a proper discussion of limitations between the ALJ and the vocational expert. Plaintiff has failed to show that she cannot perform a significant number of jobs in the national economy, which the ALJ found at step five of the sequential evaluation process.

### 4. Whether plaintiff's mental impairments meet the requirements of Listing 12.04.

At step three of the sequential evaluation process, the ALJ determines whether a claimant's mental impairments meet or equal a listed impairment in the regulations ("the Listing(s)"). 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). The purpose of the Listings is to streamline the decision-making process "by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 US 137, 153 (1987); *accord* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010-01, 58027, 2001 WL 1453802 (Nov. 19, 2001) ("The listings are an administrative convenience established by regulation to identify obviously disabled individuals."). The criteria for the Listings are

13

"demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). The burden is on the claimant to show that an impairment meets or equals a Listing. *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016). For the reasons outlined below, the Court finds that plaintiff has not met this burden.

Plaintiff contends that his mental impairment, affective disorder, meets the requirements of Listing 12.04. Pl.'s Br. at 21-22. To meet Listing 12.04, a claimant must meet subsections (A) and (B) or subsections (A) and (C). See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008) (emphasis added) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")). Plaintiff only contends that he meets 12.04(A)(1), and there is no mention of subsections (B) or (C). See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Pl.'s Br. at 21-22. Accordingly, plaintiff has failed to meet his burden here.

Plaintiff also argues that the ALJ incorrectly analyzed his mental impairment under Listing 12.06, rather than Listing 12.04. However, this argument is moot because the ALJ analyzed subsections (B) and (C). (Adm. Rec. at 14-15), and concluded that plaintiff did not meet the criteria of either subsection. (*Id.* at 15). These subsections are identical in Listings 12.04 and 12.06. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), (C), 12.06(B), (C). The record does not reflect that plaintiff's impairment meets either subsection. Moreover, plaintiff does not dispute the ALJ's findings as to subsections (B) and (C) and has thus waived any argument to the contrary. The Court finds that substantial evidence supports the ALJ's step three finding that plaintiff does not meet or

14

equal a listed impairment, and plaintiff – by omitting any argument on subsections (B) and (C) – has failed to meet his burden here.[1]

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 15th day of August, 2019.

_____
**DANA M. DOUGLAS
UNITED STATES MAGISTRATE JUDGE**

---

[1] The Court notes that plaintiff raises a fifth issue in his Statement of Errors. However, there is no argument raised in the memorandum in support on that fifth issue. Accordingly, the Court need not address it.